UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARCIA BAKER,

               Plaintiff,

v.

BROADSPIRE NATIONAL SERVICES,
INC., f/k/a KEMPER NATIONAL
SERVICES, INC., et al.,

               Defendants.

**DECISION AND ORDER**
05-CV-154S

## I. INTRODUCTION

In this action, Plaintiff Marcia Baker seeks to recover long term disability benefits under a group disability insurance policy sponsored by her former employer. Plaintiff asserts her claim pursuant to 29 U.S.C. § 1132(a)(1)(B), a provision of the Employee Retirement Income Security Act of 1974 ("ERISA"). Presently before this Court is Defendants' Motion for Summary Judgment.[1] For the reasons that follow, Defendants' Motion is granted.

## II. BACKGROUND

The following facts are undisputed for purposes of the instant Motion. Plaintiff is a former Document Review Specialist for Defendant HSBC Bank, USA ("HSBC"). During her employment, Plaintiff was covered under a long term disability plan ("the Plan") sponsored by HSBC, issued by Defendant Lumbermens Mutual Casualty Insurance ("Lumbermens"), and administered by Defendant Broadspire Services, Inc. ("Broadspire") (collectively

---

[1] Defendants' Motion was erroneously filed as a Motion to Dismiss. (Docket No. 22). In support of their Motion for Summary Judgment, Defendants filed the following documents: an Amended Notice of Motion, a Memorandum of Law, a Declaration by Daniel W. Gerber with exhibits, and a Local Rule 56.1 Statement of Material Facts, and a Reply Memorandum of Law. Plaintiff filed a Memorandum of Law, a Declaration by Marc Shatkin with exhibits, and a Rule 56.1 Statement in opposition to Defendants' Motion.

1

"Defendants").  (Defs' State., ¶ 4).  In relevant part, the Plan provides that an eligible employee is entitled to benefits, if he can establish that he is "disabled," as that term is defined by the Plan.  Specifically, the Plan states:

> Disabled/Disability means our determination that a significant change in your physical or mental condition due to:
> 1. Accidental injury;
> 2. Sickness;
> 3. Mental Illness;
> 4. Substance Abuse; or
> 5. Pregnancy;
>
> began on or after your Coverage Effective Date and prevents you from performing, during the Benefit Qualifying Period and the following 12 months, the Essential Functions of your Regular Occupation or of a Reasonable Employment Option offered to you by the Employer, and as a result you are unable to earn more than 70% of your Pre-disability Monthly Income. After that, you must be so prevented from performing the Essential Functions of any Gainful Occupation that your training, education and experience would allow to perform.

(Defs' State., ¶ 5; Gerber Dec., Exh. C, p. 7).  The Plan also vests Broadspire with the authority to:

> 1. Resolve all matters when a review has been requested;
> 2. Establish and enforce rules and procedures for the administration of the Group Policy and any claim under it;
> 3. Determine your eligibility for coverage;
> 4. Determine whether proof of your loss is satisfactory for receipt of benefit payments according to the terms and conditions of the Plan.

(Defs' State., ¶ 6; Gerber Dec., Exh. C, p. 19).

On or about December 3, 2002, Plaintiff filed her initial claim for long term disability benefits based on neuralgia, neuritis, and radiculitis with Broadspire's predecessor,

Kemper National Services ("Kemper"). (Defs' State., ¶ 7; Gerber Dec., Exh. D, A.R. 5).[2] Dr. Martin Mendelssohn, an orthopedic surgeon, reviewed all of Plaintiff's submitted medical records including a physical demands assessment completed by her employer, and a statement and physical capabilities assessment from her treating physician, as well as a copy of Plaintiff's job description as a Document Review Specialist. (Defs' State., ¶ 8; Gerber Dec., Exh. D, A.R. 115-17, 134-5, 138-40).

In relevant part, Plaintiff's job duties as a Document Review Specialist were as follows: to review standard commercial or consumer loan collateral documentation for completeness in accordance with procedures set forth in the Loan Officer's Guide and Company Policy; to assist in the review of non-standard documentation under the direction of the department manager; to value securities held as collateral to determine compliance with company requirements; to assist in the preparation of documentation exception reports for submission to management; to ensure all collateral documentation is properly input to the appropriate documentation system; to assist in the training of less experienced personnel in documentation and use of Company systems; to work with Relationship Managers on various collateral and documentation questions; and to verify the integrity of information entered into the Company's mainframe system for individual accounts. (Pl.'s State., ¶ 3).

In a report rendered on March 26, 2003, Dr. Mendelssohn opined that Plaintiff's medical records failed to establish a functional impairment which would preclude her from performing the job duties of her regular occupation, a job requiring a sedentary exertional

---

[2]"A.R." refers to the Administrative Record, which is attached as Exhibit D to the Declaration of Daniel W. Gerber. Other portions of the Administrative Record are attached as Exhibit A to the Declaration of Marc Shatkin.

3

level.  (Defs' State., ¶ 9; Gerber Dec., Exh. D, A.R. 179-80).  In particular, Dr. Mendelssohn noted that despite Plaintiff's herniated disc and reports of pain, her range of motion was reasonably normal, and she could walk on her toes and her heels during her neurological exam.  (Defs' State., ¶ 9; Gerber Dec., Exh. D, A.R. 179-80).

By letter dated April 14, 2003, Kemper advised Plaintiff through her counsel that her claim for long term disability benefits was denied but she had a right to appeal the determination.  (Defs' State., ¶ 10; Gerber Dec., Exh. D, A.R. 175-77).  Any such appeal, the letter explained, must be supported by medical documentation including "objective data, such as diagnostic test results, to support . . . [the] claim for disability," which "provides specific functional abilities, including any and all restrictions and limitations." (Defs' State., ¶ 10; Gerber Dec., Exh. D, A.R. 176).

By letter dated December 31, 2003, Broadspire acknowledged Plaintiff's letter of appeal.  (Defs' State., ¶ 11; Gerber Dec., Exh. D, A.R. 385).  In support of her appeal, Plaintiff provided a job description and a narrative from Dr. Charles Anderson, one of her treating physicians, detailing her medical treatment between October 31, 2001, and December 10, 2003. (Def.'s State., ¶ 12).  Dr. Ira Posner, an orthopedic surgeon, reviewed these new materials, along with the originally submitted medical documentation, and concluded that although Plaintiff suffered from neck and low back pain, an MRI of her lumbar spine did not reveal any significant changes, and a physical examination reflected no impairments which would preclude her from continuing sedentary work duties.  (Defs' State., ¶ 12; Gerber Dec., Exh. D, A.R. 354-56).  In particular, Dr. Posner noted that Plaintiff exhibited a good range of motion in her cervical spine, had a normal gait and heel/toe walk, had no positive physical findings and no neurological deficits aside from

evidence of a "areflexic in the right C-6 distribution." (Defs' State., ¶ 12; Gerber Dec., Exh. D, A.R. 354-56).  With respect to Dr. Anderson's narrative, Dr. Posner noted that it contained only dates of visits with a "very limited descriptive complaints in the form of SOAP[3] notes with very limited wording and no documentation of any physical examination throughout the time period." (Defs' State., ¶ 12; Gerber Dec., Exh. D, A.R. 356).

Plaintiff's medical records were also submitted to Dr. Wendy Weinstein, a specialist in internal medicine, for a third independent peer review, specifically, to determine whether Plaintiff's hypothyroid condition would affect her ability to perform sedentary duties. (Defs' State., ¶ 13).  Dr. Weinstein noted that Plaintiff's condition had been treated with medication with some adjustments, but that there were no reported complications from her condition, which would preclude her from working. (Defs' State., ¶ 13; Gerber Dec., Exh. D, A.R. 357-59).

Finally, the HSBC Long Term Disability Appeal Committee ("Appeal Committee") reviewed Plaintiff's entire file, including the three separate independent peer review reports by Drs. Mendelssohn, Posner, and Weinstein, and concluded that the information contained therein failed to establish that Plaintiff was functionally disabled from sedentary employment. (Defs' State., ¶ 14; Gerber Dec., Exh. D, A.R. 195-96).  Accordingly, the Committee upheld Kemper's initial denial of Plaintiff's claim for disability benefits. (Defs' State., ¶ 14; Gerber Dec., Exh. D, A.R. 195-96).  By letter to her attorney dated February 11, 2004, Broadspire informed Plaintiff that the denial had been upheld, detailed the documents reviewed and the rationale employed by the Appeal Committee in reaching this

---

[3] According to Plaintiff, "SOAP" stands for "Subjective, Objective, Assessment, Plan." (Shatkin Dec., ¶ 11).

5

decision, and advised that she had exhausted her administrative remedies. (<u>Defs' State.</u>, ¶ 15; <u>Gerber Dec.</u>, Exh. D, A.R. 190-91). This lawsuit followed.

### III. DISCUSSION

**A.     Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is warranted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). A fact is "material" if it "might affect the outcome of the suit under governing law." <u>Id.</u> In a case where the non-moving party bears the ultimate burden of proof at trial, the movant may satisfy its burden by pointing to the absence of evidence supporting an essential element of the non-moving party's claim. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion." <u>Addickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 158-59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970). "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." <u>Bryant v. Maffucci</u>, 923 F.2d 979, 982 (2d Cir. 1991). The function of the court is not "to weigh the evidence and determine the truth of

the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

**B.    Review of a Plan Administrator's Decision**

Plaintiff contends that she is entitled to receive long term disability benefits under the terms of the Plan.  As noted, her claim falls under 29 U.S.C. § 1132(a)(1)(B), the ERISA provision that permits a participant or beneficiary of an employee benefit plan to commence a civil lawsuit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).

Because there is no right to a jury trial under ERISA, the district court typically acts as the finder of fact and conducts a bench trial "on the papers." Muller v. First Unum Life Ins. Co., 341 F.3d 119, 124 (2d Cir. 2003).  The court reviews a plan administrator's decision to deny benefits "under a *de novo* standard unless the benefit plan gives the administrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  Muller, 341 F.3d at 123-24 (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S. Ct. 948, 956-57, 103 L. Ed. 2d 80 (1989)).

If the benefit plan vests the plan administrator with discretionary authority, the denial of benefits is subject to a deferential, "arbitrary and capricious" standard of review.  Burke v. Kodak Ret. Income Plan, 336 F.3d 103, 109 (2d Cir. 2003); Pagan v. Nynex Pension Plan, 52 F.3d 438, 441 (2d Cir. 1995) (holding that "where the written plan documents confer upon a plan administrator the discretionary authority to determine eligibility, we will not disturb the administrator's ultimate conclusion unless it is 'arbitrary and capricious'").

Under this standard, the decision to deny benefits "may be overturned only if the decision is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243, 249 (2d Cir. 1999) (quoting Pagan, 52 F.3d at 442).

In this case, it is undisputed that the Plan vests Broadspire with the authority to determine an employee's eligibility for benefits.  (Defs' State., ¶ 6; Gerber Dec., Exh. C, p. 19).  Accordingly, this Court must evaluate Defendants' decision to deny Plaintiff's claim under the arbitrary and capricious standard of review.  Burke, 336 F.3d at 109; Pagan, 52 F.3d at 441.

## C.   Arbitrary and Capricious Standard

The arbitrary and capricious standard of review is narrow, and constitutes the "least demanding form of judicial review of administrative action." Seff v. NOITU Trust Fund, 781 F. Supp. 1037, 1040 (S.D.N.Y. 1992).  Courts must examine whether the decision came as a result of a considered judgment of the relevant factors, and whether there is a "rational connection between the facts found and the choice made."  Healix Healthcare, Inc. v. Metrahealth Ins. Co., No. 97 Civ. 6838, 1999 WL 61832, at *1 (S.D.N.Y. Feb. 10, 1999) (quoting Bowman Transp. v. Arkansas-Best Freight Sys., 419 U.S. 281, 285-86, 95 S. Ct. 438, 440-42, 42 L. Ed. 2d 447 (1974)).

The arbitrary and capricious standard is highly deferential to the plan administrator.  That is, "[a] court may not upset a reasonable interpretation by the administrator."  Jordan v. Ret. Comm. of Rensselaer Polytechnic Inst., 46 F.3d 1264, 1271 (2d Cir. 1995).  This deferential review "applies to both plan interpretation and factual determinations." Dorato v. Blue Cross of W.N.Y., Inc., 163 F. Supp. 2d 203, 209 (W.D.N.Y. 2001) (citing Kinstler, 181 F.3d at 251).  As such, "it is inappropriate . . . for the trial judge to substitute his

8

judgment for that of the plan administrator." Bella v. Metro. Life Ins. Co., No. 98-CV-150, 1999 WL 782132, at *5 (W.D.N.Y. Sept. 30, 1999).

Accordingly, the decision to deny benefits "may be overturned only if the decision is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" Kinstler, 181 F.3d at 249 (quoting Pagan, 52 F.3d at 442); Dorato, 163 F. Supp. 2d at 209. "Substantial evidence . . . is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [decisionmaker and] . . . requires more than a scintilla but less than a preponderance." Miller v. United Welfare Fund, 72 F.3d 1066, 1072 (2d Cir. 1995) (quotation and citation omitted). In reviewing the administrator's decision, "district courts may consider only the evidence that the fiduciaries themselves considered." Id. at 1071.

**D.    Defendants' Motion for Summary Judgment**

Defendants contend that they are entitled to summary judgment because the decision to deny Plaintiff's claim for long term disability benefits was reasonable, supported by substantial evidence, and not contrary to law. Although not addressed in her memorandum of law, Plaintiff suggests that Defendants improperly rejected the "narrative" rendered by her treating physician, Dr. Anderson, which concludes that she is totally and permanently disabled, and that they thereby violated the "treating physician's rule."[4] (Shatkin Dec., ¶ 11-12, & Exh. A, A.R. 353). Moreover, Plaintiff argues that, in denying her claim for benefits, Defendants failed to consider how her pain, mental

---

[4] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner [of Social Security] in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No. 03-Civ.0075(RCC)(AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

9

impairments, and/or medications would have affected her cognitive ability to perform the non-physical duties of her job, and therefore, that the denial of her claim was arbitrary and capricious.

This Court has reviewed the Administrative Record and finds that Defendants' decision to deny Plaintiff's claim was not arbitrary and capricious or otherwise contrary to law.  As an initial matter, it is axiomatic that the treating physician rule, which was originally developed to control disability determinations by administrative law judges under the Social Security Act, does not apply to such determinations under ERISA.  Black & Decker Disability Plan v. Nord, 538 U.S. 822, 829, 123 S. Ct. 1965, 1969, 155 L. Ed. 2d 1034 (2003).  The Supreme Court has explicitly held that "courts have no warrant to require [ERISA Plan] administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation."  Nord, 538 U.S. at 834, 123 S. Ct. at 1972.

Even if the treating physician rule applied in this case, this Court finds that Dr. Posner clearly reviewed Dr. Anderson's narrative in evaluating Plaintiff's disability claim on appeal and sufficiently articulated his reasons for rejecting it, thereby meeting the requirements of the rule.  A review of Dr. Anderson's narrative, which was prepared for Plaintiff's attorney, reveals a mere sketch of Plaintiff's subjective medical complaints and her doctor's objective assessment and treatment plan during her visits between October 31, 2001, and December 10, 2003.  (Shatkin Dec., Exh. A, A.R. 349-53).  In the most basic terms, Dr. Anderson's narrative reflects Plaintiff's treatment for hypothyrodism, lower back and neck pain, sinusitis, and headaches.  (Id.).  In assessing Dr. Anderson's narrative, Dr.

10

Posner noted that it contained only dates of visits with "very limited descriptive complaints[,] . . . very limited wording[,] and no documentation of any physical examination throughout the time period." (Defs' State., ¶ 12; Gerber Dec., Exh. D. A.R. 356). Ultimately, Dr. Posner rejected the conclusion that Plaintiff was totally and permanently disabled, based on the absence of any significant changes in her MRI or any documented impairment upon physical examination that would preclude her from continuing sedentary labor. (Defs' State., ¶ 12; Gerber Dec., Exh. D. A.R. 356). Under the circumstances, this Court finds that Dr. Posner properly assessed the medical evidence in the record, including the opinion rendered by Plaintiff's treating physician, Dr. Anderson.

With respect to Plaintiff's second argument, this Court finds that the record does not support her contention that Defendants failed to consider her pain, mental deficiencies and/or medication in reaching the conclusion that she could perform the duties of her regular occupation as a Document Review Specialist. Rather, the independent peer reviews rendered by Drs. Mendelssohn, Posner, and Weinstein reflect that each considered one or all of these factors. For example, in his peer review, Dr. Mendelssohn acknowledged Plaintiff's "chronic history of lumbar pain," and her complaints of neck, back, and trapezial pain, but determined that such complaints were not substantiated by comprehensive physical exam or abnormal neurological findings. (Shatkin Dec., Exh. A, A.R. 179). Consistent with these findings, Dr. Mendelssohn ultimately concluded that the medical documentation failed to support a functional impairment that would preclude Plaintiff from performing her job. (Shatkin Dec., Exh. A, A.R. 180). Likewise, Dr. Posner noted Plaintiff's complaints of cervical, right arm, and chronic low back pain, but determined that physical examination did not document an impairment that would render

her unable to work. (Shatkin Dec., Exh. A, A.R. 355-56). Lastly, in the final peer review, Dr. Weinstein noted that Plaintiff had a history of anxiety, and had been treated with medications, including narcotics for pain, but that her treatment would not preclude her from working and the records did not support a finding that she could not perform her duties as a Document Review Specialist. (Shatkin Dec., Exh. A, A.R. 358-59). Moreover, the Appeal Committee reviewed each peer review as part of the entire record in upholding the denial of benefits.

Plaintiff's argument is unavailing for another reason. Specifically, other than a subjective report of anxiety, Plaintiff fails to cite to any evidence that she suffered from any cognitive or psychological deficiencies resulting from a medical condition or use of medication, which would render her disabled within the meaning of the Plan. (Shatkin Dec., Exh. A, A.R. 349, 358). Significantly, Dr. Anderson's medical narrative, upon which Plaintiff heavily relies, makes no reference to cognitive difficulties such as memory loss or disorientation. (Shatkin Dec., Exh. A, A.R. 349-53). In fact, other medical documentation in the record suggests that Plaintiff was not suffering from cognitive problems during the relevant period. For example, a January 24, 2002, report from Kaleida Health Center indicates that Plaintiff was not suffering any symptoms of memory loss, confusion, depression, or anxiety, and had no indicia of impairments in her judgment and insight, orientation, memory, mood or affect. (Shatkin Dec., Exh. A, A.R. 157-58). A subsequent report from the same health care provider, dated March 21, 2002, notes that upon physical examination, Plaintiff demonstrated no psychiatric problems. (Shatkin Dec., Exh. A, A.R. 202-03). Finally, in a physician's statement rendered on April 25, 2002, Plaintiff's doctor noted that she had no psychiatric impairments and answered "Yes" to the question, "Do

you believe that this patient is competent to endorse checks and direct the use of proceeds thereof?" (Shatkin Dec., Exh. A, A.R. 135).

Absent any evidence that Plaintiff suffered from a cognitive deficiency, it cannot be said that Defendants erred or acted arbitrarily in failing to consider such an impairment. Moreover, even if Plaintiff was able to identify evidence of a debilitating mental problem, "the mere existence of conflicting evidence does not render . . . [a plan administrator's] decision arbitrary or capricious." Lekperic v. Bldg. Serv. 32B-J Health Fund, No. 02 CV 5726, 2004 WL 1638170, at *4 (E.D.N.Y. July 23, 2004). It is not the province of this Court to engage in an ad hoc weighing of the evidence or to substitute its judgment for that of the administrator. Given the extremely deferential standard applied in such cases and based on the administrative record, this Court finds that Defendants' determination that Plaintiff is not disabled within the meaning of the Plan was reasonable, supported by substantial evidence, and not contrary to law. As such, Defendants are entitled to summary judgment.

## IV. CONCLUSION

For the foregoing reasons, this Court finds that Defendants' decision to deny Plaintiff's claim for disability benefits was reasonable, and supported by substantial evidence in the record, and was therefore not arbitrary and capricious. Accordingly, Defendants are entitled to summary judgment.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion for Summary Judgment, erroneously docketed as a Motion to Dismiss (Docket No. 22) is GRANTED.

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.

Dated:      January 25, 2007
            Buffalo, New York

                                    /s/William M. Skretny
                                    WILLIAM M. SKRETNY
                                    United States District Judge